UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____X

Guiding Eyes for the Blind, Inc.,
                Plaintiff,

            **SETTLEMENT AGREEMENT**

        v.

            21-cv-05580 (KMK)(AEK)

Kiira Wolfe,
                Defendant.
_____X

        **WHEREAS**, Plaintiff, Guiding Eyes for the Blind, Inc. ("Guiding Eyes") initiated an action in New York State Supreme Court, Westchester County against Defendant Kiira Wolfe ("Wolfe"), Index No. 58135/2021; and,

        **WHEREAS**, Wolfe removed said action to the United States District Court, Southern District of New York, as captioned above; and,

        **WHEREAS**, the parties appeared before U.S. Magistrate Judge Andrew E. Krause for the purpose of discussing settlement of the matter; and,

        **WHEREAS**, the parties wish to resolve their dispute without further litigation, they agree as follows:

1. Within seven (7) calendar days of the execution of this agreement, Wolfe will return the subject of this litigation, a brood dog named *MacKenzie*, to Plaintiff's Canine Development Center located in Patterson, New York for evaluation. Thereafter, *MacKenzie's* care and breeding will be governed by the terms found in the attached Exhibit "A."

2. Upon the completion of *MacKenzie's* third litter and whelping, permanent ownership and possession of *MacKenzie* shall immediately transfer to Wolfe.

3. Guiding Eyes is the sole owner of *MacKenzie*, subject to the rights granted to Wolfe through this settlement.

4. When Wolfe must be away and cannot bring *MacKenzie* with her, and *Mackenzie* cannot remain with the other current members of Wolfe's household (Wolfe's mother and husband, who have lived with *MacKenzie*), Wolfe will use the foster sitting list or an approved personal sitter. If Wolfe is unable to find a sitter and needs help, she will contact

the Clover Williams for assistance, as far in advance as possible. If Wolfe travels with *MacKenzie*, Wolfe will notify Clover Williams, Cryogenics Manager prior to her trip, to verify that *MacKenzie* will not be needed during Wolfe's absence. If *MacKenzie* is needed during Wolfe's absence, *MacKenzie* must be placed with a sitter and transported to the Canine Development Center when needed. Wolfe shall notify the Canine Development Center whenever *MacKenzie* is going to be away from home overnight.

5. *MacKenzie* shall not be boarded anywhere other than the following locations:
   - at the Canine Development Center.
   - with an authorized family in the Brood Stud Sitter Program.
   - with another family approved by Guiding Eyes.

6. *MacKenzie* shall be on-lead or in a fenced area and always supervised when outdoors.

7. Guiding Eyes shall provide all veterinary care with a veterinarian of its choosing until *MacKenzie* is retired, at which time all veterinary care becomes the sole responsibility of Wolfe is Wolfe opts to adopt *MacKenzie*. Guiding Eyes will provide the name of an acceptable veterinarian in Raleigh, NC in the event *MacKenzie* needs emergency or routine care not related to breeding.

8. Guiding Eyes shall have direct control of all breeding of *Mackenzie*, and all other breeding of *MacKenzie* is prohibited.

9. Guiding Eyes retains sole ownership, and the right of determination of disposition, of all puppies resulting from the breeding of *MacKenzie*.

10. Wolfe will not be held liable for the loss of *MacKenzie*.

11. Guiding Eyes will not be held liable for damages or injury that may be caused by *MacKenzie*.

12. Guiding Eyes owns *Mackenzie* and shall maintain the primary authority regarding all health decisions concerning *MacKenzie*, subject to the rights granted to Wolfe through this settlement. Other than at times *MacKenzie* is needed for breeding or whelping, she shall remain in the possession of Wolfe.

Case 7:21-cv-05580-KMK   Document 13-1   Filed 08/12/21   Page 3 of 5

13. Guiding Eyes, as the sole owner of *MacKenzie*, has the right to remove *Mackenzie* from Wolfe due to an uncured material breach of this Agreement, provided Wolfe has been given Notice as provided herein and has failed or refused to remedy the issue within five (5) days.

14. In the event Guiding Eyes commits an uncured material breach of this Agreement by failing to return *MacKenzie* to Wolfe after an appointment, breeding, or whelping, title and the right to immediate possession of *MacKenzie* shall automatically transfer to Wolfe, provided Guiding Eyes has been given Notice as provided herein and has failed or refused to remedy the issue within five (5) days.

15. In the event either Party believes the other has failed or refused to comply with the terms of this Agreement, or has substantially breached the Agreement, the Party alleging such shall give Notice in writing to the other Party and their attorney by email and Certified Mail. The Party receiving such Notice shall be afforded five (5) days from receipt of the Notice to cure or produce proof in writing why the conduct complained of is either necessary or not a breach of the Agreement.

16. If the Parties cannot agree after presentation of such Notice and proof, either party shall have the right to seek a judicial determination as to whether there was a breach and if such breach was of a substantial nature so as to allow the other Party to declare the Agreement ended. If the non-breaching Party is successful, the breaching Party shall pay all reasonable attorney fees and compensatory damages resulting from the breach.

17. Within seven (7) calendar days of the execution of this agreement, this Agreement shall be filed in the USDC SUNY as a settlement of litigation by Guiding Eyes with a request that the Agreement be "SO ORDERED," thereby settling the case originally filed in New York Supreme Court, Westchester County under Index No. 58135/2021.

18. All life-saving measures shall be taken during the course of this Agreement to preserve *MacKenzie's* health and life. No decision to deny or withhold treatment or end *MacKenzie's* life will be made without the advisement and written consent of Wolfe and Guiding Eyes. Wolfe shall be kept apprised of any health conditions or complications *MacKenzie* suffers while in the care of Guiding Eyes. Should Guiding Eyes at any point make a determination of euthanasia of *MacKenzie*, all rights in ownership of *MacKenzie* shall immediately transfer to Wolfe for all care and treatment at Wolfe's sole expense. In that case, Wolfe shall have the right to immediate possession of *MacKenzie* to provide life-saving treatment of her choice without necessity of further consultation with Guiding Eyes. Guiding Eyes will provide all medical records, x-rays, test results, or other information as required by the subsequent treating veterinarian. In the event that MacKenzie dies while in the care of Guiding Eyes, her body shall be preserved and returned to Wolfe for necropsy and cremation at Wolfe's expense, and Wolfe shall be entitled to retain *MacKenzie's* ashes.

19. This Agreement shall in all respects be interpreted, enforced and governed in accordance with and pursuant to the laws of the State of New York, without regard to conflicts of law principles. Any dispute, claim, or cause of action arising out of, or related to, this Agreement shall be commenced only in the United States District Court, Southern District of New York. Such court shall have exclusive jurisdiction over such claim, dispute or disagreement, and the Parties consent to the personal jurisdiction of those courts. The Parties expressly waive the right to a jury trial in any dispute, claim or cause of action arising out of, or related to, this Agreement.

20. The Parties acknowledge and agree that this Agreement reflects the entire agreement between the Parties regarding the subject matter herein and fully supersedes and replaces all prior agreements and understandings between the Parties hereto. There is no other agreement except as stated herein. Both Parties acknowledge that neither has made any promises to the other, except those contained in this Agreement.

21. The Parties agree that in the event any provision(s) of this Agreement is judicially declared to be invalid or unenforceable, only such provision(s) shall be invalid or unenforceable without invalidating or rendering unenforceable the remaining provisions hereof, provided the same does not substantially impair the intent of this Agreement.

22. This Agreement may not be changed, waived, or supplemented unless such change, waiver, or supplement is in writing and signed by the Parties.

**AGREED:**

_____      08·08·2021
KIIRA WOLFE                                DATE

_____      August 8, 2021
GUIDING EYES FOR THE BLIND, INC.     DATE
By ~~Thomas A. Panek~~
Robert L. Byrne, ESQ.
Atty. for Guiding Eyes for the Blind, Inc.

SO ORDERED _____
KENNETH M. KARAS U.S.D.J.
8/14/2021

### EXHIBIT A

**Breeding readiness monitoring:**
1. All travel costs are at Wolfe's expense.
2. Mackenzie will be presented to Guiding Eyes within 7 days for an initial 7 day stay at its Breeding Kennel facility. During that time

a. A Guiding Eyes staff veterinarian will do a comprehensive clinical exam which may include but not be limited to exam, bloodwork, ultrasound, and/or any medical procedures needed to ensure her health and fitness for breeding. If upon presentation, Mackenzie is found to be in estrus, she would remain in the Breeding Kennel for the duration of the estrus cycle, estimated at 3 weeks additional. If she ovulates, Mackenzie will be bred, and she will be discharged to Wolfe once her estrus has finished.

3. If Mackenzie does not go into estrus within seven (7) months of the execution of this Agreement, she shall be presented to Guiding Eyes' Breeding Kennel for evaluation and exposure to other broods for 14 days. If Mackenzie goes into estrus while in the Breeding Kennel – she would remain in the Breeding Kennel for the duration of the estrus cycle, estimated at 3 weeks additional. If she ovulates, Mackenzie will be bred, and she will be discharged to Wolfe once her estrus has finished.
4. Mackenzie will be discharged to Wolfe if she does not go into estrus after 14 days in the kennel.
5. This process shall be repeated every 6 weeks until she comes into estrus on her own at home or is stimulated into estrus by one of these visits.
6. If Mackenzie goes into estrus while at home, Wolfe must alert Guiding Eyes that same day and present her to the Guiding Eyes Breeding Kennel within 48 hours.

a. If Mackenzie ovulates during that estrus and the Guiding Eyes veterinarian deems that she is healthy for breeding, Mackenzie will be bred, and she will be discharged to Wolfe once her estrus has finished.

b. If Mackenzie goes into estrus yet fails to ovulate this would be deemed a split cycle. She would be discharged to Wolfe and the 6-week vet examination/admit process will restart until she comes into estrus, ovulates and is bred.

7. While Mackenzie is at home, Wolfe agrees to comply with all points of this Agreement and instructions on gestational care that Guiding Eyes provides.
8. Mackenzie will be presented to the Guiding Eyes Breeding Kennel, or to North Carolina State University Veterinary Hospital, for a pregnancy check ultrasound on the date requested which is around halfway through the pregnancy.

**Whelping:**
1. If deemed pregnant, Mackenzie will be presented to the Guiding Eyes Whelping Kennel on the date specified which is typically 3-4 days before her due date.
2. She will stay in the Whelping Kennel for the whelp and to raise her litter through complete weaning.
3. Once the pups are weaned and her milk production has stopped, Mackenzie will be picked up by Wolfe to wait for her next estrus.
4. This whelping will count as her 2nd whelp.

**Repeat the process until Mackenzie has weaned her third litter**
1. If/when 7 months pass since the date of her previous estrus, Mackenzie will be presented to the Breeding Kennel.
2. The steps outlined in Breeding readiness monitoring and whelping above will be followed until Mackenzie has completed the weaning of her 3rd litter.

**Retirement**
1. Mackenzie will be retired from the Guiding Eyes' breeding colony after she has completed the weaning of her 3rd litter.
2. Mackenzie must be spayed within 6 months after weaning her 3rd litter. This will be done at no cost if done at Guiding Eyes. If Wolfe will assume all costs, she may have Mackenzie spayed by a local veterinarian.
3. A spay certificate will be provided to the Guiding Eyes within 2 weeks of the spay surgery.

*[Signature] Kevin Wolfe*
08-08-2021

*[Signature] Robert H. Byrne*
8-8-21